IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| APRIL JACKSON, GWENDOLYN HOLLAND, and LASONIA FRAZIER | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 4:16-cv-635 |
| | § | |
| BLUESTEM GROUP INC. and BLUESTEM SALES, INC. d/b/a FINGERHUT | § | |
| | § | |
| Defendants. | § | |

APPRIL JACKSON, GWENDOLYN HOLLAND, and LASONIA FRAZIER ("Plaintiffs") bring this action against Defendants BLUESTEM GROUP INC. and BLUESTEM SALES, INC. d/b/a FINGERHUT ("Defendants") to stop Defendants' practice of making illegal debt collection calls to the cellular telephones of Plaintiffs, and to obtain redress for injuries caused by Defendants' conduct. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**INTRODUCTION**

1. "The right to be let alone is indeed the beginning of all freedom."[1] Plaintiffs bring this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.* ("FDCPA").

2. Defendants operate an online commercial retailing business through several e-commerce retail brands, including Fingerhut. Defendants target consumers who may require various financing options in order to purchase retail goods.

[1] *Public Utilities Commission v. Pollak*, 343 U.S. 451, 467 (1952) (Douglas, J., dissenting).

3. During the normal course of business, Defendants engage in reckless and aggressive debt collection practices which outright ignore controlling federal and state law, and the rights of the called parties.

4. Defendants repeatedly made unsolicited calls to Plaintiffs' cellular telephones in violation of the TCPA. Defendants made the unauthorized and illegal calls to Plaintiffs' cell phones using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of bullying Plaintiffs into paying an allegedly deficient balance. Defendants also called Plaintiffs after they clearly stated they did not wish to be called again. Several of Defendants' calls also violate the FDCPA, which is a statute Congress passed to prevent harassing, unconscionable, and unfair debt collection practices.

**PARTIES**

5. Plaintiff APRIL JACKSON is a natural person and citizen of the State of Texas who resides in Arlington, Texas.

6. Plaintiff GWENDOLYN HOLLAND is a natural person and citizen of Pennsylvania who resides in Philadelphia, Pennsylvania.

7. Plaintiff LASONIA FRAZIER is a natural person and citizen of the State of Texas who resides in Copperas Cove, Texas.

8. Defendant BLUESTEM GROUP INC. is a corporation under the laws of the State of Nevada. Defendant maintains its principal office at Eden Prairie, Minnesota, and may be served with process by serving its Registered Agent, The Corporation Trust Company of Nevada, 701 S Carson Street Suite 200, Carson City, Nevada 89701.

9. Defendant BLUESTEM SALES, INC. D/B/A FINGERHUT is a corporation under the laws of the State of Delaware. Defendant BLUESTEM SALES, INC. D/B/A FINGERHUT is a

subsidiary of Defendant BLUESTEM GROUP INC. Defendant BLUESTEM SALES, INC. D/B/A FINGERHUT maintains its principal office at Eden Prairie, Minnesota, and may be served with process by serving its Registered Agent, The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

10. Whenever in this complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendants or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

12. The Court has personal jurisdiction over Defendants because it conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District. Furthermore, the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair play or substantial justice. For these same reasons, venue is proper in this District.

## LEGAL BASIS FOR THE CLAIMS

### The TCPA

13. Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing

calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent. If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing.[2] Calls that include non-marketing messages require consent, but not written consent. The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

14. Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying specific aspects of the TCPA. The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is broadly defined, confirming liability attaches to calls made to the wrong number or reassigned number, and clarifying consumers may revoke consent through reasonable methods. *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order. The Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially. "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." The Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. 47 C.F.R. § 64.1200(f)(8).

is not "actually…using those functionalities to place calls" at the time. *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

15. The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber. If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

16. Furthermore, the TCPA established the National Do-Not-Call List, and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC"). See 47 C.F.R. § 64.1200(d). The IDNC is "a list of persons who request not to receive telemarketing calls made by or on behalf of that [seller]." *Id.* The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry. *Id.* at § 64.1200(d)(3), (6). Any company, or someone on the company's behalf, who calls a member of the company IDNC is liable to that person under the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

17. Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

18. Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

**The FDCPA**

19. In 1978, Congress enacted the FDCPA in response to data showing that abusive collection practices lead to an increase in personal bankruptcy filings, marital instability, loss of employment, and invasion of personal privacy. The FDCPA prohibits false, deceptive, misleading, harassing, abusive and offensive conduct during collection of consumer debts. *See* 15 U.S.C. § 1692a, *et seq.* In particular, the FDCPA prohibits, *inter alia*, the following practices:

- Discussing debt with a third party. 15 U.S.C. § 1692b(2)
- Contacting a third party more than one time for the purpose of obtaining debtor's location information. 15 U.S.C. § 1692d(1)
- Calling debtor's workplace if debtor notified debt collector that such calls are unwanted. 15 U.S.C. § 1692c(a)(3)
- Calling debtor before the hours of 8 a.m. or 9 p.m. 15 U.S.C. § 1692c(a)(1)
- The collector from threatening violence or the use of criminal activity towards the consumer or property. 15 U.S.C. § 1692d(1)

- The collector from using obscene or profane language. 15 U.S.C. § 1692d(2)
- The collector from engaging in harassing, abusive and/or oppressive conduct. 15 U.S.C. § 1692d
- The collector from making false, deceptive, or misleading statements. 15 U.S.C. § 1692e, e(10)
- The collector from stating or implying that non-payment will result in arrest or criminal prosecution. 15 U.S.C. § 1692e(4)
- The collector from threatening suit, garnishment, or seizure of property without the legal ability to do the same. 15 U.S.C. § 1692e(5)
- The collector from failing to identify itself and the purpose of the call. 15 U.S.C. § 1692e(11)

20. The FDCPA further expressly provides a private right of action to anyone who receives prohibited collection calls. A prevailing plaintiff under the FDCPA is entitled to recovery of actual damages (including mental anguish), a statutory penalty of $1,000, plus costs and attorneys' fees. 15 U.S.C. § 1692k(a).

**FACTS SPECIFIC TO PLAINTIFF APRIL JACKSON**

21. Beginning around August 2015, Jackson began to receive calls from the number 844-240-9758, a number associated with Defendants. Since that time, Jackson has received at least 172 calls from Defendants.

22. Jackson received all calls described above on her cellular telephone assigned a number ending in 8620.

23. Defendants and/or third parties on Defendants' behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Jackson's prior express written consent.

24. When Jackson answered the calls, there was silence before Defendants' live representative engaged on the other end of the line. Once Defendants' live representative came on the line, Jackson could hear call center noise in the background.

25. Defendants' live representative opened the calls by asking for a person named Josh Fuller. Jackson repeatedly told Defendants' live representative that she was not Josh Fuller, that Defendants had the wrong number, and to stop calling.

26. Despite Jackson's numerous protests that Defendants were calling the wrong phone number, Defendants continued to call.

27. To the extent Jackson ever provided consent for Defendants to call her with an ATDS, she revoked any consent.

28. Jackson felt the calls were an invasion of her privacy and wanted Defendants to stop calling. Defendants ignored Jackson's multiple requests and continued to call her.

29. Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Jackson believed Defendants called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

30. On information and belief, Defendants' ATDS called Jackson on every occasion.

31. The telephone number Defendants called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

32. Jackson is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 8620.

33. Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

34. Jackson did not provide Defendants with prior express written consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

35. All calls Defendants made to Jackson violate 47 U.S.C. § 227.

**FACTS SPECIFIC TO PLAINTIFF GWENDOLYN HOLLAND**

36. Beginning around May 2015, Holland began to receive calls from various numbers, including 800-503-2370, 866-836-8987, and 844-240-9758, which are associated with Defendants. At the time Holland filed this lawsuit, she had received at least 199 debt collection calls from Defendants, sometimes multiple calls in a single day.

37. Holland received all calls described above on her cellular telephone assigned a number ending in 3577.

38. Defendants and/or third parties on Defendants' behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Holland's prior express written consent.

39. When Holland answered the calls, there was a momentary pause ("dead air") before Defendants' live representative engaged on the other end of the line. Holland also noticed call center background noise on the line once she was connected with a live representative.

40. Holland repeatedly told Defendants to take her off of their call list. Defendants told Holland that they "could not take her off the list."

41. On at least one occasion, Defendants threatened illegal action against Holland unless she paid the debt.

42. Holland felt the calls were an invasion of privacy and wanted Defendants to stop calling. Defendants ignored Holland's requests and continued to call her.

43. To the extent Holland provided consent to be called using an ATDS, she revoked any consent.

44. The purpose of the calls was to collect on an allegedly past due personal debt. Defendants illegally contacted Holland's father in regard to the allegedly past due personal debt.

45. Based on the circumstances of the calls (e.g. dead air, large volume of calls, repeated calls after protest), Holland believed Defendants called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

46. On information and belief, Defendants' ATDS called Holland on every occasion.

47. The telephone number Defendants called was assigned to a cellular telephone service for which usage minutes accumulate for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

48. Holland is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 3577.

49. Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

50. Holland did not provide Defendants with prior express written consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

51. Holland is a consumer who Defendants is attempting to collect from on behalf of a third party. Accordingly, the debt allegedly owed to Defendants is a consumer debt.

52. On information and belief, Defendants dedicates a substantial portion of its business to debt collection. Defendants regularly engages in the practice of collecting debts.

53. All calls Defendants made to Rowland violate 47 U.S.C. § 227, and 15 U.S.C. § 1692.

## FACTS SPECIFIC TO PLAINTIFF LASONIA FRAZIER

54. Beginning around July 2015, Frazier began to receive calls from various numbers, including 844-505-3328 and 866-836-8987, which are associated with Defendants. Since that time, Frazier has received at least 288 calls from Defendants.

55. Frazier received all calls described above on her cellular telephone assigned a number ending in 6631.

56. Defendants and/or third parties on Defendants' behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Frazier's prior express written consent.

57. When Frazier answered the calls, there was a momentary pause ("dead air") before Defendants' live representative engaged on the other end of the line.

58. The purpose of the calls was to collect on an allegedly past due personal debt. Frazier told Defendants' live representatives to stop calling her.

59. To the extent Frazier ever provided consent to be called, she revoked any consent.

60. Frazier felt the calls were an invasion of her privacy and wanted Defendants to stop calling. Defendants ignored Frazier's multiple requests and continued to call her. Frazier felt the calls were harassing and abusive, both because of the volume of calls and the time of the calls.

61. Based on the circumstances of the calls (e.g. dead air, large volume of calls, continued calls after protest), Frazier believed Defendants called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

62. On information and belief, Defendants' ATDS called Frazier on every occasion.

63. The telephone number Defendants called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

64. Frazier is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 0950.

65. Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1(A)(i).

66. Frazier did not provide Defendants with prior express written consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

67. Frazier is a consumer who Defendants is attempting to collect from on behalf of a third party. Accordingly, the debt allegedly owed to Defendants is a consumer debt.

68. On information and belief, Defendants dedicate a substantial portion of their business to debt collection. Defendants regularly engage in the practice of collecting debts.

69. All calls Defendants made to Frazier violate 47 U.S.C. § 227, and 15 U.S.C. § 1692.

## FIRST CAUSE OF ACTION
## ALL PLAINTIFFS
## (VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

70. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth

herein.

71. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

72. As a result of Defendants' violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.*, Plaintiffs are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

73. Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**SECOND CAUSE OF ACTION**
**ALL PLAINTIFFS**
**(KNOWING AND/OR WILLFUL VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)**

74. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

75. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

76. As a result of Defendants' violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.* Plaintiffs are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

77. Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

**THIRD CAUSE OF ACTION**
**PLAINTIFFS HOLLAND AND FRAZIER**
**(VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *ET SEQ.*)**

78. Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

79. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the FDCPA, including but not limited to each and every one of the above cited provisions of 15 U.S.C. § 1692d(2), 15 U.S.C. § 1692d, and 15 U.S.C. § 1692e(5).

80. As a result of Defendants' violations of the FDCPA, Plaintiffs are entitled to an award of $1,000.00 in statutory damages, for each and every violation, and actual damages, including mental anguish.

**ATTORNEY'S FEES**

81. Each and every allegation contained in the foregoing paragraphs is re-alleged as if fully rewritten herein.

82. Plaintiffs are entitled to recover reasonable attorney fees and request the attorneys' fees be awarded.

**JURY DEMAND**

83. Plaintiffs demand a jury trial on all issues triable to a jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

- An award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227, *et seq*.;
- An award of $1,500.00 in statutory damages, for each and every willful and/or

knowing violation, pursuant to 47 U.S.C. § 227, *et seq*.;

- An award of $1,000.00 in statutory damages, for each and every violation, pursuant to 15 U.S.C. § 1692, *et seq*.;
- Actual damages, including mental anguish.
- Preliminary and permanent injunctive relief enjoining Defendants, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phones, and enjoining Defendants from engaging in abusive and oppressive collection practices as outlined in this Complaint.
- Attorneys' fees, costs and any and all other relief deemed just and proper.

Dated: July 1, 2016

Respectfully Submitted,

*/s/ Jarrett L. Ellzey*______________

W. Craft Hughes
Jarrett L. Ellzey
**HUGHES ELLZEY, LLP**
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Phone: (713) 554-2377
Fax: (888) 995-3335
E-Mail: craft@hughesellzey.com
jarrett@hughesellzey.com

Bryant Fitts
**FITTS LAW FIRM, PLLC**
2700 Post Oak Blvd., Suite 1120
Houston, Texas 77056
Phone: (713) 871-1670
Fax: (713) 583-1492
Email: bfitts@fittslawfirm.com

**ATTORNEYS FOR PLAINTIFFS**